Page 1

```
          UNITED STATES DISTRICT COURT
              DISTRICT OF OREGON
              PORTLAND DIVISION
_____

OREGON FIREARMS FEDERATION,   )
INC., et al.,                 )
                              )
          Plaintiffs,         )
                              ) Case Nos.
     v.                       ) 2:22-cv-01815-IM
                              ) 3:22-cv-01859-IM
KATE BROWN, et al.,           ) 3:22-cv-01862-IM
                              ) 3:22-cv-01869-IM
          Defendants.         )
_____)
                              )
                              )
          (Continued)         )
_____


              * VIDEOCONFERENCE *
   VIDEOTAPED DEPOSITION UPON ORAL EXAMINATION
                      OF
                JASON J. MYERS
_____


              Witness located in:

                 Salem, Oregon



   * All participants appeared via videoconference *




DATE TAKEN:   February 1, 2023

REPORTED BY:  Tia B. Reidt, Washington RPR, CSR #2798
                          Oregon #22-0001
```

BUELL REALTIME REPORTING, LLC
206.287.9066 | 800.846.6989

5615a2e9-b97f-4981-b8d2-5e24faa8c0dd

**Ex. 8- Dodd Decl.**

**Page 1 of 15**

Page 2

```
 1  _____
 2          (Continued)              )
                                     )
 3  MARK FITZ, et al.,               )
                                     )
 4                Plaintiffs,        )
        v.                           )
 5                                   )
    ELLEN F. ROSENBLUM, et al.,      )
 6                                   )
                  Defendants.        )
 7  _____  )
    KATERINA B. EYRE, et al.,        )
 8                                   )
                  Plaintiffs,        )
 9      v.                           )
                                     )
10  ELLEN F. ROSENBLUM, et al.,      )
                                     )
11                Defendants.        )
    _____  )
12  DANIEL AZZOPARDI, et al.,        )
                                     )
13                Plaintiffs,        )
        v.                           )
14                                   )
    ELLEN F. ROSENBLUM, et al.,      )
15                                   )
                  Defendants.        )
16  _____
```

Page 3

```
 1                         APPEARANCES
 2

 3   For the State of Oregon Defendants:

 4             HARRY WILSON
               MARKOWITZ HERBOLD
 5             1455 SW Broadway, Suite 1900
               Portland, OR 97201
 6             (503) 972-5076
               HarryWilson@markowitzherbold.com
 7

 8   For the non-intervenor defendants, governor, the
     Attorney General, and the superintendent of the Oregon
 9   State Police:

10             BRIAN MARSHALL
               OREGON DEPARTMENT OF JUSTICE
11             SPECIAL LITIGATION UNIT
               100 SW Market Street
12             Portland, OR 97201
               (971) 673-1800
13             Brian.S.Marshall@doj.state.or.us

14
     For Oregon State Sheriffs' Association and the witness:
15
               ELMER DICKENS
16             OREGON STATE SHERIFFS' ASSOCIATION
               PO Box 635
17             Carlton, OR 97111
               (503) 704-1052
18             Elmerdickens@live.com

19
     Videographer:
20
               MICHAEL HENRY
21             BUELL REALTIME REPORTING
               1325 Fourth Avenue, Suite 1840
22             Seattle, WA 98101
               (206) 287-9066
23             Info@BuellRealtime.com

24

25                     *   *   *   *   *
```

5615a2e9-b97f-4981-b8d2-5e24faa8c0dd

**Ex. 8- Dodd Decl.**

**Page 3 of 15**

Case 3:22-cv-01859-IM   Document 94-8   Filed 02/06/23   Page 4 of 15
Oregon Firearms Federation, Inc., et al. v. Brown, et al.                    Jason J. Myers

Page 14

1  Q.  If -- if the courts in Oregon ultimately
2  determine that Measure 114 is constitutional, will the
3  Oregon State Sheriffs' Association take any further
4  action to advise its members that Measure 114 is not
5  constitutional?
6  A.  I'm not sure I can answer that question
7  because it hasn't happened, and so the question isn't
8  before the board.
9  Q.  Are you personally aware of any sheriff's
10 office that intends to refuse to implement Measure 114
11 on the grounds that it is unconstitutional?
12 A.  I cannot answer that question.  I'm not aware.
13 Q.  Not aware.  Okay.
14     Has OSSA taken a position on whether
15 Measure 114 is constitutional under the Oregon
16 constitution?
17 A.  No.  That position statement was under the
18 federal constitution.
19 Q.  And I'm sorry to go backward for just a
20 moment, but, Sheriff Myers, just so I understand your
21 previous testimony, to your knowledge, you're not aware
22 of any sheriff's office that intends to refuse to
23 implement Measure 114 on the basis that it is
24 unconstitutional; correct?
25 A.  Yes, I'm not aware.

Page 31

1  Q. So who -- what kind of individuals -- what
2  roles of individuals are members of the permit agent
3  workgroup?
4  A. Well, we thought it was important that
5  these -- the workgroup be made up of subject matter
6  experts. So they're folks that will actually be doing
7  the job.
8  And so for OSSA, the representatives are civil
9  managers with CHL experience. And they come from both
10 large, medium, and small sheriff's offices.
11 And on the chief side, we have kind of
12 similar -- there are records supervisors, although the
13 chiefs have no experience with issuing CHL. We're
14 trying to get that kind of subject matter expert, that
15 level of individual that would be responsible for this
16 and/or has responsibilities for similar kind of
17 programs.
18 Q. When you say "chiefs," you're referring to
19 the -- to Oregon police chiefs; correct?
20 A. Yeah, the Chief's Association, yes.
21 Q. Okay.
22    What is the status of the process map?
23 A. We -- so that group has met probably about
24 four or five times. They are to the point -- they're
25 very close to finishing their work product, which I

Case 3:22-cv-01859-IM   Document 94-8   Filed 02/06/23   Page 6 of 15
Oregon Firearms Federation, Inc., et al. v. Brown, et al.                    Jason J. Myers

Page 32

1  just mentioned was a 22-page process that I have in
2  front of me.
3          It's very in-depth, because there are a lot of
4  steps and a lot of liability if any of those steps are
5  missteps. So they are to the point where they are just
6  about ready to finalize their recommendation.
7       Q.   And who will that recommendation be made to?
8       A.   That recommendation will go to the OSSA and
9  OACP executive committees.
10      Q.   And do you expect those committees to vote on
11 the recommendation?
12      A.   Yes. I'm sure there will be a discussion.
13 I'm sure that there will be questions. There may be
14 even suggestions that items go back to the workgroup
15 for further detail or changes. But I anticipate, in a
16 process like this, that will occur -- it's entirely up
17 to those bodies to determine and, you know, eventually
18 vote and approve whatever the recommendations are.
19      Q.   What is the effect of an approval by OSSA?
20      A.   Well, I think it's important to be consistent
21 throughout the state. So having those two bodies
22 review the work and make sure that it meets the letter
23 intent of the measure and is applied consistently
24 across the state. So I think having that oversight is
25 very important to ensure fairness to individuals that

Page 39

1  will be shortly.
2       Q.  Got it.  And the second phase, you mentioned,
3  is approval.  That's just the discussion and
4  potentially voting with the OSSA and OACP executive
5  committees that we just discussed; correct?
6       A.  That is correct.
7       Q.  Has a -- will those committees discuss the
8  recommendation together or separately?
9       A.  My vision is to do it together.  I think
10 there's -- it's important for chiefs and sheriffs --
11 again, for consistency and working off the same sheet
12 of music -- that they have this discussion together and
13 make decisions together because they're equally married
14 to this, for lack of better words, in terms of the
15 process.  So, yes, that is my vision as to how to work
16 together.
17      Q.  Has that meeting been scheduled?
18      A.  It has not, because we're again -- as soon as
19 it's finalized, we will work to schedule that meeting
20 as soon as possible.
21      Q.  Okay.
22          And Phase III is implementation.  You
23 mentioned a few things that might need to occur there.
24 Two of them that I managed to scratch down were
25 training and technical assistance.

Case 3:22-cv-01859-IM   Document 94-8   Filed 02/06/23   Page 8 of 15
Oregon Firearms Federation, Inc., et al. v. Brown, et al.                    Jason J. Myers

Page 40

1  <u>Are there other implementation items that --</u>
2  <u>or are there other items that go into implementation</u>
3  <u>other than training and technical assistance?</u>
4      <u>A.   Those are the two items.  I said information</u>
5  <u>sharing, education, training, and technical assistance.</u>
6  <u>It's the way I see it.  Because some offices -- some</u>
7  <u>sheriff's offices have experience with CHL.  It may be</u>
8  <u>a little easier.  And then you have agencies like</u>
9  <u>police departments that have no experience.  So it just</u>
10 <u>varies on their levels of sophistication or knowledge.</u>
11     Q.   My understanding is that Measure 114 allows
12 sheriffs in local police departments to assign a
13 designee to carry out the responsibilities of
14 processing applications and issuing permits.
15          Has there been any discussion of either
16 sheriffs or police departments designating each other
17 as the permit agent for their jurisdiction perhaps
18 under some kind of cost-sharing agreement?
19     A.   Not at -- not at the association level that
20 I'm aware of.  I'm certain there's probably discussions
21 at the local level, but I cannot answer that because
22 I've not been privy to those conversations.
23     Q.   Okay.
24          Are you aware of any reason why a sheriff or
25 police department couldn't, if they reached an

Case 3:22-cv-01859-IM   Document 94-8   Filed 02/06/23   Page 9 of 15
Oregon Firearms Federation, Inc., et al. v. Brown, et al.                    Jason J. Myers

Page 45

1  have taken that online training; is that correct?
2       A.   That is correct.
3       Q.   So to go back to that in-person demonstration
4  component, what is the status of the workgroup's work
5  on that component of Measure 114?
6       A.   So the workgroup finalized its
7  recommendations, and we set a meeting that was going to
8  be held between both OSSA and the OACP executive
9  committees.  And that meeting was held a couple weeks
10 ago.
11          Unfortunately, the OACP's executive committee,
12 because of a foul-up in scheduling, wasn't able to
13 attend.  But we went ahead with that meeting because it
14 was in my declaration that it was going to happen.
15          And so the OSSA executive committee reviewed
16 the recommendations and had some items that they wanted
17 the workgroup to take a look at again and/or readdress.
18 <u>And so those items were sent back to the workgroup,</u>
19 <u>which has met and addressed all of those issues and has</u>
20 <u>finalized their work product.</u>
21          <u>And so that one is very close.</u>  The work
22 product is just being vetted.  It was captured by the
23 chair and put into the documents, and now that
24 information is being vetted right now.  And once that
25 is approved by the workgroup, that will be going before

Page 46

1  the joint OSSA and OACP executive committees.
2          I will note there are two, kind of, areas that
3  are outstanding that we -- they're difficult because
4  the measure didn't articulate on those items, but they
5  are very, very critically important.
6      Q.  Yeah.  What are those two areas?
7      A.  The first area is around proficiency, what
8  constitutes proficiency.  There's no indication in
9  there.  So if it takes a person two hours to take this
10 in-person demonstration, does that mean they're
11 proficient or not proficient?  It's subjective.
12         The other item is around individuals with
13 disabilities.  There is no -- the measure is silent on
14 ADA issues or any kind of ADA accommodations, and that
15 is an area of high litigation.  So that's an area that
16 is of great concern as we were putting this together.
17         What happens if we have a person that comes in
18 that, for all other purposes other than maybe they
19 don't have arms and can't handle a firearm but, for all
20 other purposes, could, under the Second Amendment,
21 purchase a firearm?  There's no other issues other than
22 they have an ADA issue.  How do we give that individual
23 an accommodation?
24         So those are the two outstanding areas that we
25 think create a little bit of -- or, in some cases, a

Case 3:22-cv-01859-IM   Document 94-8   Filed 02/06/23   Page 11 of 15
Oregon Firearms Federation, Inc., et al. v. Brown, et al.                    Jason J. Myers

Page 54

1    Q.  Got it.
2        And then the liability that the other
3    workgroup is considering, it concerns potentially
4    refusing to issue or issuing a permit to someone who
5    either may not be appropriate to have a permit or
6    should have received a permit; is that right?
7    A.  That's correct.
8    Q.  And are you aware of any other liabilities
9    that the workgroups have considered?
10   A.  No, I'm not.
11   Q.  Once the in-person demonstration proposal is
12   approved by OSSA and OACP's executive committees, what
13   will happen next with that recommendation?
14   A.  So it will be similar to the permit agent
15   workgroup.  It will kind of be that Phase III, which is
16   the implementation phase.  So that would be information
17   sharing, training, and technical assistance.
18       And that one is going to be both for law
19   enforcement and, depending on the potential for other
20   entities to be certified, what does that look like, and
21   how do we ensure that those entities receive the same
22   information, same training, same forms, and that
23   they're following those so that there's consistency?
24   Q.  And so the recommendation that is approved by
25   OSSA and OACP, executive committees would be

Case 3:22-cv-01859-IM   Document 94-8   Filed 02/06/23   Page 12 of 15
Oregon Firearms Federation, Inc., et al. v. Brown, et al.                    Jason J. Myers

Page 55

1  promulgated to the members of each association along
2  with the training and information sharing that you
3  discussed; correct?
4      A.  That's correct.
5      Q.  And once OSSA's members have that
6  recommendation, they can then make a decision about who
7  and whether to certify in-person demonstration
8  trainers; correct?
9      A.  Yes.
10     Q.  Yeah.
11     And just so -- I think you have been clear
12 about this.  But just to make sure that the record is
13 clear, OSSA itself will not certify in-person
14 demonstration trainers; is that right?
15     A.  I don't know that because the boards haven't
16 met and made that determination.  It's probable that it
17 won't, but I can't say that because that is a decision
18 that will be at the board -- at the executive committee
19 level.
20     Q.  Got it.
21     A.  So you would be asking me to answer a question
22 that they're the ones that make that decision of
23 determination.
24     Q.  Sure.  Fair enough.
25     And do you know if the workgroup is going to

Page 75

1  decisions that are preventing enforcement were to run
2  out or be vacated by other courts and the measure were
3  to go into effect, what -- is there any contingency
4  plan for how a sheriff's office would accept an
5  application and issue a permit?
6      A.  Well, since it does -- since nothing exists,
7  there's really no contingency plan because I think our
8  organization and the chiefs are working towards that,
9  but the pieces aren't in play.  So I don't know how you
10 do something when you don't have all of the components
11 to be able to effectuate it.
12     Q.  The first two items you mentioned are things
13 that we have talked a lot about, that's the process and
14 the in-person demonstration.  And I understand the
15 workgroups are working on that.
16         And, eventually, you know, I think it's -- you
17 would say it's fair to assume that there will be an
18 approval on a recommendation at some point; correct?
19     A.  Yes.
20     Q.  Okay.
21         So does that mean that the only -- you know,
22 the only legal impediment to Measure 114's eventual
23 implementation is the FBI issue?
24     <u>A.  Legal impediment?  Yeah, that's the aspect I</u>
25 <u>see.  There are other impediments as well, and I think</u>

Case 3:22-cv-01859-IM   Document 94-8   Filed 02/06/23   Page 14 of 15
Oregon Firearms Federation, Inc., et al. v. Brown, et al.                    Jason J. Myers

Page 76

1  I've stated those.
2       Q.  Yeah.  Got it.
3           And those other impediments are just, you
4  know, the process isn't complete and the in-person
5  demonstration is impossible to take at present;
6  correct?
7       A.  Yeah.  And the resources don't exist in terms
8  of personnel because there was no funding that came
9  along with this.  So that is another impediment.
10          And, honestly, I believe that if, as you were
11 saying, everything was vacated and it's all systems go,
12 even if everything was stood up and working, the system
13 will be overwhelmed.  Because I know from experience in
14 watching this happen, individuals are going to descend
15 on this.  And it's probably going to be numbers that
16 are astronomical.
17          And so without the system being stood up,
18 without the resources, it will -- the system will be
19 overwhelmed just by the sheer vast numbers.  And I
20 think it's at OSP as well.  They don't have the
21 resources either.  So it's system-wide.  The resources
22 are not there.  So even if you have the systems in
23 place, that is still an impediment as well.
24      Q.  Got it.
25          And we haven't talked about resources yet.

Page 94

```
 1                    C E R T I F I C A T E
 2
 3    STATE OF WASHINGTON
 4    COUNTY OF PIERCE
 5
 6          I, Tia Reidt, a Certified Court Reporter in and
 7    for the State of Washington, do hereby certify that the
 8    foregoing transcript of the deposition of JASON J.
 9    MYERS, having been duly sworn, on February 1, 2023, is
10    true and accurate to the best of my knowledge, skill and
11    ability.
12          Reading and signing was requested pursuant to
13    FRCP Rule 30(e).
14          IN WITNESS WHEREOF, I have hereunto set my hand
15    and seal this 6th day of February, 2023.
16
17
18          _____
19          /S/ Tia B. Reidt
            Tia B. Reidt, RPR, CCR #22-0001
20          NOTARY PUBLIC, State of
            Washington.
21          My commission expires
            5/15/2026.
22
23
24
25
```

BUELL REALTIME REPORTING, LLC
206.287.9066 | 800.846.6989

5615a2e9-b97f-4981-b8d2-5e24faa8c0dd

Ex. 8- Dodd Decl.
Page 15 of 15