# Deposition of Ashley Hlebinsky

# Oregon Firearms Federation, Inc., et al. v. Brown, et al.

# January 20, 2023



**206.287.9066 I 800.846.6989**
1325 Fourth Avenue, Suite 1840, Seattle, Washington 98101
www.buellrealtime.com
email: info@buellrealtime.com



Page 1

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

---

| | |
|---|---|
| OREGON FIREARMS FEDERATION, INC., et al., | ) ) ) |
| Plaintiffs, | ) Case Nos. ) 2:22-cv-01815-IM |
| vs. | ) 3:22-cv-01859-IM ) 3:22-cv-01862-IM |
| KATE BROWN, et al., | ) 3:22-cv-01869-IM ) |
| Defendants. | ) ) |
| MARK FITZ, et al., | ) VIDEO-RECORDED ) VIDEOCONFERENCE |
| Plaintiffs, | ) DEPOSITION OF ) ASHLEY HLEBINSKY |
| vs. | ) ) |
| ELLEN F. ROSENBLUM, et al., | ) ) |
| Defendants. | ) *CAPTION ) CONTINUES* |
| KATERINA B. EYRE, et al., | ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| ELLEN F. ROSENBLUM, et al., | ) ) |
| Defendants. | ) |

---

DATE TAKEN:   JANUARY 20, 2023

REPORTED BY:  LORRIE R. CHINN, RPR,
Washington Certified Court Reporter No. 1902
Oregon Certified Court Reporter No. 97-0337

Oregon Firearms Federation, Inc., et al. v. Brown, et al.                    Ashley Hlebinsky

Page 2

1  DANIEL AZZOPARDI, et al.,      )
                                  )
2             Plaintiffs,         )
                                  )
3     vs.                         )
                                  )
4  ELLEN F. ROSENBLUM, et         )
   al.,                           )
5                                 )
              Defendants.         )
6

7

8  _____

9      VIDEO-RECORDED VIDEOCONFERENCE DEPOSITION

10                      OF

11              ASHLEY HLEBINSKY

12 _____

13                  1:03 p.m.

14              LAS VEGAS, NEVADA

15  (All participants appeared via videoconference.)

16

17

18

19

20

21

22

23

24

25

Oregon Firearms Federation, Inc., et al. v. Brown, et al.                          Ashley Hlebinsky

Page 3

1           R E M O T E   A P P E A R A N C E S

2

3    FOR THE OFF PLAINTIFFS (via videoconference):

4          LEONARD W. WILLIAMSON
           Van Ness, Williamson, LLP
5          960 Liberty Street, Suite 100
           Salem, Oregon 97302
6          503.365.8800
           l.williamson@vwllp.com

7

8    FOR THE DEFENDANTS (via videoconference):

9          HARRY B. WILSON
           Markowitz Herbold, PC
10         1455 SW Broadway, Suite 1900
           Portland, Oregon 97201-3412
11         503.295.3085
           harrywilson@markowitzherbold.com

12
           BRIAN S. MARSHALL
13         Senior Assistant Attorney General
           Special Litigation Unit, Trial Division
14         Oregon Department of Justice
           100 SW Market Street
15         Portland, Oregon 97201
           971.673.1880
16         brian.s.marshall@doj.state.or.us

17
     FOR THE PROPOSED INTERVENOR-DEFENDANT OREGON ALLIANCE
18   FOR GUN SAFETY:

19         ZACHARY J. PEKELIS
           W. SCOTT FERRON
20         Pacifica Law Group, LLP
           1191 Second Avenue, Suite 2000
21         Seattle, Washington 98101-3404
           206.245.1700
22         zach.pekelis@pacificalawgroup.com
           scott.ferron@pacificalawgroup.com

23

24   ALSO PRESENT (via videoconference):

25         TANIA GRANT, VIDEOGRAPHER

Page 4

1              VIDEO-RECORDED VIDEOCONFERENCE DEPOSITION
                      OF ASHLEY HLEBINSKY
2
                        EXAMINATION INDEX
3

4    EXAMINATION BY:                              PAGE

5    Mr. Wilson                                   6

6    Mr. Pekelis                                  82

7    Mr. Williamson                               145

8    Mr. Wilson                                   149

9

10                      EXHIBIT INDEX

11   EXHIBITS FOR IDENTIFICATION                  PAGE

12   Exhibit 30     Declaration of Ashley Hlebinsky   9

13   Exhibit 31     NRA Women|Ashley Hlebinsky:      97
                    Historically Speaking

14   Exhibit 32     Testimony of Ashley Hlebinsky,   101
                    United States Senate, Subcommittee
15                  on the Constitution, Committee on
                    the Judiciary, Stop Gun Violence:
16                  Ghost Guns, May 11, 2021

17

18

19

20

21

22

23

24

25

Page 87

1   Q.  Would you agree that in general most

2   historians recognized in the field as such have Ph.D.s?

3   A.  Within the field of firearms study --

4   Q.  No, within the --

5   A.  -- not necessarily.

6   Q.  -- field of history?

7   A.  Yes, but I don't believe it's the only thing

8   that can allow you to have -- to be considered a

9   historian.

10  Q.  Okay.  Did you write a dissertation as part of

11  your master's program?

12  A.  I did not.  The way that University of

13  Delaware operated was they preferred research and

14  writing seminars both years.  And so instead we were

15  able to focus on different topics.  I studied armed

16  feminism and liberal activism in the 1960s and '70s

17  that involved the use of firearms.

18  Q.  So you didn't have to defend a dissertation as

19  part of that process?

20  A.  No.

21  Q.  Have you authored scholarly articles in

22  peer-reviewed history journals?

23  A.  I have written a few articles.  I've

24  participated as well in panels that have been

25  published.  One was by the Journal of Technology and

Oregon Firearms Federation, Inc., et al. v. Brown, et al.                    Ashley Hlebinsky

Page 113

1      A.   Sure thing.

2      Q.   Could you please describe the methodology that

3  you used in preparing this declaration?

4      A.   How exactly do you mean?

5      Q.   Whatever sources and methods and principles

6  that you applied in order to reach the conclusions that

7  you arrived at?

8      A.   So I took two really specific avenues on that,

9  so I looked at kind of the evolution of the technology

10 was one component of that.  And then since it was asked

11 about the laws, I looked into the laws side of it

12 rather than adding, you know, ancillary subject matter

13 on it with cultural context.

14      And then I broke it down generally by section

15 based on the Bruen decision of the Founding Era, second

16 Founding Era.  So I tried to take that component, and

17 then I tried to separate it into evolution, just what

18 was there, what wasn't there, and then any laws that I

19 found in my research that may or may not have had

20 anything to do with that particular technology.

21      Q.   Okay.  Would you agree that proper historical

22 work involves surveying the full array of available

23 sources and evaluating the reliability of those

24 sources?

25      A.   I would.

Oregon Firearms Federation, Inc., et al. v. Brown, et al.                    Ashley Hlebinsky

Page 114

1      Q.   Did you do this in preparing your declaration?

2      A.   I read a lot of different research on it, on

3  the various subject matters.  But then at the same time

4  I had experience already doing that when I built the

5  Cody Museum and worked in other collections.

6      Q.   Did you --

7      A.   So it wasn't just for this deposition, but

8  I've worked on a lot of different things.

9      Q.   Excuse me.  Did you survey the full array of

10  available sources?

11      A.   I'm not sure how would categorize the full

12  array.

13      Q.   Well, did you exhaust your efforts to find

14  sources to potentially provide illuminating and

15  relevant information about the subject matter?

16      A.   Yes.  In my research and the amount of time I

17  had, I went to every -- well, and based on my past

18  experience with it, yes, I did everything I could to

19  find what I could; although, timeframes are always

20  tight on these things.  But I did look at an array of

21  sources.

22      Q.   Did time constraints prevent you from

23  consulting potentially relevant sources that you might

24  otherwise have probed?

25      A.   There can always be more information for you

Oregon Firearms Federation, Inc., et al. v. Brown, et al.                              Ashley Hlebinsky

Page 129

1     Q.  And Duncan is cited in footnote 34?

2     A.  Yes.

3     Q.  Okay.  And that's the district court's

4  decision in Duncan from 2019?

5     A.  I believe so, yes.

6     Q.  Any other sources that you relied on for that

7  proposition?

8     A.  I did see it in -- I believe I saw it also in

9  Johnson, et al., in their section on powder

10  regulations.  I believe it's in there as well.

11     Q.  And Johnson, et al., you're referring to the

12  citation in footnote 31, which is a law school

13  casebook?

14     A.  Correct.

15     Q.  Okay.  Well, let's take Duncan first.  Do

16  historians typically rely on contemporary judicial

17  opinions as sources for understanding historical

18  events?

19     A.  I think that's up to the person.  A lot of

20  times with that it's coming from experts.  So if it was

21  a place where I could find something that was a

22  succinct analysis of it and then I saw the laws on the

23  Duke site, then, yes, I would use it.

24     Q.  Okay.  It's a secondary source, you agree?

25     A.  Correct.

Oregon Firearms Federation, Inc., et al. v. Brown, et al.                                    Ashley Hlebinsky

Page 130

1      Q.   Probably several steps removed from the

2  original source, whatever it's relying on, you would

3  agree?

4      A.   Correct.

5      Q.   In this case the Duncan decision was reversed

6  by the Court of Appeals.  Were you aware of that when

7  you cited it?

8      A.   I wasn't aware of all of the different

9  components of it.  I know it went through, and then I

10  know it went up, and now it's back down for evaluation.

11      Q.   Right.  So the fact that that decision was

12  actually vacated or reversed, does that cause you any

13  concern with relying on this as an assertion?

14      A.   Not necessarily.

15      Q.   Why not?

16      A.   Because just because the overarching argument

17  created by one side may have had -- may have been

18  reversed for specific reasons, it doesn't mean that's

19  one of them.

20      Q.   Let's go to paragraph 26.  This is on the next

21  page, page 19.  And you write, "In summary, at the time

22  of the Founding Era, laws about firearms restriction

23  were regularly directed towards groups of people rather

24  than the firearms themselves."

25          Do you see that?

Oregon Firearms Federation, Inc., et al. v. Brown, et al.                                    Ashley Hlebinsky

Page 151

1                        REPORTER'S CERTIFICATE

2

3        I, LORRIE R. CHINN, the undersigned Certified Court
Reporter, pursuant to RCW 5.28.010 authorized to administer
4   oaths and affirmations in and for the State of Washington, do
hereby certify:

5
        That the sworn testimony and/or remote proceedings, a
6   transcript of which is attached, was given before me at the
time and place stated therein; that any and/or all witness(es)
7   were duly sworn remotely to testify to the truth; that the
sworn testimony and/or remote proceedings were by me
8   stenographically recorded and transcribed under my
supervision, to the best of my ability; that the foregoing
9   transcript contains a full, true, and accurate record of all
the sworn testimony and/or remote proceedings given and
10  occurring at the time and place stated in the transcript; that
a review of which was requested; that I am in no way related
11  to any party to the matter, nor to any counsel, nor do I have
any financial interest in the event of the cause.

12
Reading and signing was not requested pursuant to FRCP
13  Rule 30(e).

14       WITNESS MY HAND AND DIGITAL SIGNATURE this 26th day
of January, 2023.

15

16

17

18  LORRIE R. CHINN, RPR, CCR
Washington State Certified Court Reporter No. 1902
19  Oregon State Certified Court Reporter No. 97-0337
lorrie@buellrealtime.com

20

21

22

23

24

25