Shawn M. Lindsay
shawn@jurislawyer.com
Daniel J. Nichols
dan@jurislawyer.com
JurisLaw LLP
Three Centerpointe Drive, Suite 160
Lake Oswego, OR 97035
Telephone: (503) 968-1475

  *Attorneys for Eyre Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| OREGON FIREARMS FEDERATION, INC., et al.,<br>　　　　　　　　　Plaintiffs,<br>　v.<br>TINA KOTEK, et al.,<br>　　　　　　　　　Defendants. | Case No. 2:22-cv-01815-IM *(Lead Case)*<br>Case No. 3:22-cv-01859-IM *(Trailing Case)*<br>Case No. 3:22-cv-01862-IM *(Trailing Case)*<br>Case No. 3:22-cv-01869-IM *(Trailing Case)*<br><br>CONSOLIDATED CASES<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF ON LEGISLATIVE FACTS** |
| MARK FITZ, et al.,<br>　　　　　　　　　Plaintiffs,<br>　v.<br>ELLEN F. ROSENBLUM, et al.,<br>　　　　　　　　　Defendants. | |
| KATERINA B. EYRE, et al.,<br>　　　　　　　　　Plaintiffs,<br>　v.<br>ELLEN F. ROSENBLUM, et al.,<br>　　　　　　　　　Defendants. | |
| DANIEL AZZOPARDI, et al.,<br>　　　　　　　　　Plaintiffs,<br>　v.<br>ELLEN F. ROSENBLUM, et al.,<br>　　　　　　　　　Defendants. | |

PLAINTIFFS' SUPPLEMENTAL BRIEF ON LEGISLATIVE FACTS

Plaintiffs submit this supplemental brief with regard to the consideration of legislative facts in this case. As explained below, most facts pertinent to the constitutionality of Measure 114 are properly understood as legislative facts, rather than more traditional adjudicative facts.

"Adjudicative facts are simply the facts of the particular case." Fed. R. Evid. 201, 1972 advisory committee note. They are facts "about the parties and their activities, businesses, and properties, as distinguished form general facts which help the tribunal decide questions of law and policy and discretion." *Langevin v. Chenango Ct., Inc.*, 447 F.2d 296, 300 (2d Cir. 1971). The Federal Rules are all about how these types of facts can, should, or must be admitted into evidence.

"Legislative facts, on the other hand, are those which have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201, 1972 advisory committee note. "Legislative facts do not usually concern the immediate parties but are general facts which help the tribunal decide questions of law, policy, and discretion." *Marshall v. Sawyer*, 365 F.2d 105, 111 (9th Cir. 1966) (quoting Kenneth Culp Davis, *The Requirement of a Trial-Type Hearing*, 70 Harv. L. Rev. 193, 199 (1956)). While the name initially can cause confusion, legislative facts are *not* limited to those facts that a *legislature* has considered. Rather, all facts *relevant* to the lawmaking process, *as well as facts relevant to constitutional and statutory interpretation*, are typically "legislative facts." Fed. R. Evid. 201, 1972 advisory committee note. A classic illustration of a legislative fact is data found by social scientists describing a condition in the world. *See, e.g.*, *Dunagin v. City of Oxford*, 718 F.2d 738, 748 n.8 (5th Cir. 1983) (en banc) (plurality op.) ("[T]he issue of whether there is a correlation between advertising and consumption is a legislative and not an adjudicative fact question. It is not a question specifically related to this one case or controversy; it is a question of social factors and happenings which may submit to some partial

empirical solution but is likely to remain subject to opinion and reasoning."); *Unger v. Young*, 134 S.Ct. 20, 22 n.* (2013) (Alito, J., dissenting from the denial of certiorari) (acknowledging that "the data in the social science studies [considered by a court in a previous case] constituted legislative facts"); *see also Lockhart v. McCree*, 476 U.S. 162, 168 n.3 (1986) (declining to accept the argument that "social science studies" are the proper subject of "lower courts' 'factual' findings" to which "the clearly erroneous standard of Rule 52(a) applies," because such studies constitute "'legislative' facts" not subject to the Federal Rules of Evidence).

More specifically, and as set forth below: (1) legislative facts are not facts as to which findings are or ought to be made at trial; (2) legislative facts are not subject to the Federal Rules of Evidence at all; (3) the court of appeals will give de novo consideration to legislative facts; and (4) the court of appeals will not limit its consideration of legislative facts to the record assembled in a trial court. Plaintiffs respectfully submit that these considerations should assist the Court in resolving the many questions concerning admissibility of evidence now before the Court.

\* \* \*

Legislative facts are ordinarily not found through trials, and they need not be submitted to the factfinder as part of the evidentiary record. *See Prentis v. Atl. Coast Line Co.*, 211 U.S. 210, 227 (1908) (Holmes, J.) ("A judge sitting with a jury is not competent to decide issues of fact; but matters of fact that are merely premises to a rule of law he may decide."). This is the general rule for constitutional litigation. "The constitutionality of statutes is typically determined by reference to general considerations … and other 'legislative facts' …[,] rather than to facts presented through testimony and other formal evidence subject to rules of evidence developed largely for the control of lay juries." *Metzl v. Leininger*, 57 F.3d 618, 622 (7th Cir. 1995). In short, legislative facts are not ordinarily presented through testimony and cross-examination, but "more often are facts

Page 2         PLAINTIFFS' SUPPLEMENTAL BRIEF ON LEGISLATIVE FACTS

reported in books and other documents not prepared specially for litigation or refined in its fires." *Ind. Harbor Belt R.R. Co. v. Am. Cyanamid Co.*, 916 F.2d 1174, 1182 (7th Cir. 1990).

The reason *why* legislative facts are ordinarily not found through trials is *not* that litigants infrequently have trials that implicate legislative facts. Rather, the reason is that legislative facts are not the type of facts to which the Federal Rules of Evidence apply at all.

Cases and commentary recognizing this legal principle are legion. *See, e.g.*, *Ass'n of Nat'l Advertisers, Inc. v. FTC*, 627 F.2d 1151, 1163 n.24 (D.C. Cir. 1979) ("The Advisory Committee for the Federal Rules of Evidence embraced the general rule [in 1972] that legislative facts need not be developed through evidentiary hearings."); *Libertarian Nat'l Comm., Inc. v. FEC*, 930 F.Supp.2d 154, 157 (D.D.C. 2013) ("Legislative facts are 'general facts which help the tribunal decide questions of law and policy,' … are 'without reference to specific parties,' and 'need not be developed through evidentiary hearings.'" (citations omitted)); *Landell v. Sorrell*, 382 F.3d 91, 203 (2d Cir. 2004) (Winter, J., dissenting) ("Determination of legislative facts is not governed by the Federal Rules of Evidence. Nor are they subject to clearly erroneous review under Fed. R. Civ. P. 52. Instead, they are subject to de novo review, and appellate courts not only can find legislative facts on their own but they also usually do so." (citations omitted)).

What this means is that parties are not required to "lay a foundation" for evidence of legislative facts or present it in admissible form for summary judgment, because the Court may investigate these matters itself and may even rely on sources put forward (or "introduced") by *no* party. Fed. R. Evid. 201, 1972 advisory committee note ("[T]he judge is unrestricted in his investigation and conclusion. He may reject the proposition of either party or of both parties. He may consult the sources of pertinent data to which they refer …. He may make an independent search for persuasive data or rest content with what he has or what the parties present.").

Appellate courts thus give de novo consideration to findings of legislative fact. *See Free v. Peters*, 12 F.3d 700, 706 (7th Cir. 1993) ("appellate review … of the social scientific or other data on which [legal] rules are based[] is plenary"); *United States v. Singleterry*, 29 F.3d 733, 740 (1st Cir. 1994) ("The clear error standard does not apply … when the fact-finding at issue concerns 'legislative' … facts."). And for good reason, as unlike adjudicative facts, legislative facts underlie broad legal rulings that are binding in future cases, so an appellate court deferring to district court findings of legislative facts could result in an important legal issue turning, for the entire circuit (or the whole federal judiciary), on a single trial court's determination of contested issues of social science, sociology, or economics. *See Dunagin*, 718 F.2d at 748 n.8 (plurality op.). Courts making consequential decisions with implications far beyond the parties to a particular case should not face that kind of limitation on their ability to consider all relevant facts. Hence, when it comes to legislative facts, "any formal requirements of notice other than those already inherent in affording [an] opportunity to hear and be heard and exchanging briefs, and any requirement of formal findings at any level," is "inappropriate." Fed. R. Evid. 201, 1972 advisory committee note.[1]

That also explains why, when addressing legislative facts, appellate courts are not limited by the record below. In evaluating district court decisions based on legislative facts, "[i]nsisting on a cramped notion of what is part of the record is particularly inappropriate." *United States v. Hunt*, 63 F.4th 1229, 1250 (10th Cir. 2023). "[T]he writings and studies of social science experts

---

[1] That is why legislative facts may be considered by a Court even without being asked to take judicial notice. *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010); Fed. R. Evid. 201. This stems from the "fundamental differences" between legislative and adjudicative facts. Fed. R. Evid. 201, 1972 advisory committee note. The factual underpinnings necessary for deciding a broad rule of law, such as the constitutional contours of the Second Amendment, may rarely satisfy the rules for judicial notice. Yet such (legislative) facts are often the most relevant considerations to constitutional adjudication. "[J]udicial access to legislative facts" is therefore unrestricted. Fed. R. Evid. 201, 1972 advisory committee note.

on legislative facts are often considered and cited by the Supreme Court with or without introduction into the record or even consideration by the trial court." *Dunagin*, 718 F.2d at 748 n.8 (plurality op.) (collecting examples). Indeed, the Justices "sometimes rely on their review of sources never presented to the court (as with the per curiam majority in *Bush v. Gore*, 531 U.S. 98, 103 (2000), and Justice Stevens and Breyer on multiple occasions, including for the court in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142-43 (1999)." *Hunt*, 63 F.4th at 1251.

Nowhere is this reliance more frequently seen than in Second Amendment cases. In *Heller,* for example, for the proposition that handguns are "the most preferred firearm in the nation to 'keep' and use for protection of one's home and family," the Supreme Court cited not to record "evidence" but to the D.C. Circuit's decision below. *District of Columbia v. Heller*, 554 U.S. 570, 628-29 (2008). This was not because the issue did not come up: The Supreme Court specifically declined the Justice Department's request to build out portions of the record that were lacking—including "whether, and to what extent, long guns provide a functionally adequate alternative to handguns for self-defense in the home"—preferring to weigh such issues itself based on legislative facts available to it, whether contained in briefs or discoverable through available resources. *See* Br. for the United States 31 n.9, *District of Columbia v. Heller*, No. 07-290 (Jan. 2008). The D.C. Circuit, in turn, likewise eschewed reliance on a "record," and instead supported this conclusion by citing directly to a social science paper. *See Parker v. District of Columbia*, 478 F.3d 370, 400 (D.C. Cir. 2007) (citing Gary Kleck & Marc Gertz, *Armed Resistance to Crime: The Prevalence & Nature of Self-Defense with a Gun*, 86 J. Crim. L. & Criminology 150 (1995)).

The story was much the same in *Bruen*. There, there was *no* district court record—the district court had entered judgment on the pleadings because the plaintiffs' claims were foreclosed by circuit precedent when the complaint was filed. *See N.Y. State Rifle & Pistol Ass'n, Inc. v.*

*Beach*, 354 F.Supp.3d 143 (N.D.N.Y. 2018).  But that did not stop the Supreme Court from holding that New York's may-issue licensing scheme (which called itself a shall-issue scheme) violated the Second Amendment.  In fact, the Supreme Court expressly rejected the argument that it could not "answer the question presented without giving respondents the opportunity to develop an evidentiary record."  *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S.Ct. 2111, 2135 n.8 (2022).  That is because the constitutionality of New York's regime turned on the contours of "the Nation's history of firearm regulation," which is a question of legislative, not adjudicative, fact.

To be sure, *Bruen* noted that district courts are "entitled to decide a case based on the historical record compiled by the parties." *Id.* at 2130 n.6.  But in saying that, the Court plainly did not mean to cast aside the ordinary principles governing legislative facts, which it had just relied upon itself in reviewing the historical record compiled by the parties *via citations in briefs*.  In fact, *Bruen* made clear that the analysis it demands does *not* ask courts "to resolve historical questions in the abstract," but rather requires that courts resolve the fundamentally "*legal* question[]" of whether a particular restriction on keeping or bearing arms is consistent with our nation's historical tradition of firearm regulation.  *Id.* at 2130 & n.6.  *Bruen* also clarified that the historical analysis a Second Amendment challenge demands is no different from the analysis entailed in resolving First Amendment claims.  In both types of cases, "the government must generally point to historical evidence about the reach of the [relevant] Amendment's protections." *Id.* at 2130 (citing *United States v. Stevens*, 559 U.S. 460, 468-71 (2010), as "placing the burden on the government to show that a type of speech belongs to a 'historic and traditional categor[y]' of constitutionally unprotected speech 'long familiar to the bar'" (alteration in original)).

The doctrine of legislative facts also explains why court after court has accepted government and industry estimates regarding the number of certain types of "arms" lawfully

owned by Americans even though the sources containing those estimates were not put into evidence. For instance, Justice Alito in *Caetano* quoted a Michigan Court of Appeals decision for the proposition that "hundreds of thousands of Tasers and stun guns have been sold to private citizens," *Caetano v. Massachusetts*, 577 U.S. 411, 420 (2016) (Alito, J., concurring), and that decision based its conclusion on a law review article which, in turn, relied on "a newspaper article from 1985," *People v. Yanna*, 824 N.W.2d 241, 245 n.5 (Mich. Ct. App. 2012). Other courts have done similarly with respect to magazines capable of accepting more than 10 rounds in particular. *See, e.g.*, *Duncan v. Bonta*, 970 F.3d 1133, 1142 (9th Cir. 2020) ("One estimate based in part on government data shows that from 1990 to 2015, civilians possessed about 115 million LCMs out of a total of 230 million magazines in circulation."); *Kolbe v. Hogan*, 849 F.3d 114, 129 (4th Cir. 2017) (en banc) ("46% of all magazines owned"); *N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 255 (2d Cir. 2015) ("[A]bout 25 million large-capacity magazines were available in 1995" and another "nearly 50 million such magazines … were approved for import by 2000[.]"). The Ninth Circuit's (now-abrogated) pre-*Bruen* Second Amendment decisions made similarly extensive use of legislative facts in the Second Amendment context. *See, e.g.*, *Jones v. Bonta*, 34 F.4th 704, 726 n.24 (9th Cir. 2022) (facts about "categories of guns"), *vacated and remanded in light of Bruen*, 47 F.4th 1124 (9th Cir. 2022); *United States v. Chovan*, 735 F.3d 1127, 1140-41 (9th Cir. 2013) (social science research concerning domestic violence).

Taking a step back, one might be tempted think that all of this—the law review article and the newspaper article cited in the Michigan court decision that Justice Alito cited, for instance, and even the judicial opinion (which itself is of course an out-of-state court statement being "offered" for the truth of the matters asserted therein)—is hearsay. And if one were talking about adjudicative facts, that conclusion would be correct. But when dealing with legislative facts, the

calculus is fundamentally different. The question of whether legislative facts are inadmissible hearsay simply does not compute, because the hearsay rules do not apply to legislative facts at all. As Professor Kenneth Culp Davis—whose taxonomy of adjudicative facts and legislative facts the Advisory Committee adopted in 1972—has explained, "even though nothing in the Rules provides that they are limited to adjudicative facts," "[t]he hearsay provisions of the Federal Rules of Evidence clearly should not apply (Rule 803(8), for instance)" to legislative facts. Kenneth Culp Davis, *Facts in Lawmaking*, 80 Colum. L. Rev. 931, 941 (1980); *see* Fed. R. Evid. 201, 1972 Advisory Committee Note (relying on Professor Davis's framework of legislative facts and adjudicative facts to explain why a judge may rely on legislative facts even without taking judicial notice of them—and, indeed, should not take judicial notice of them, as they are not the type of facts to which the Rules apply); *see also Lockhart*, 476 U.S. at 168 n.3.

Ultimately, the fact that every significant Supreme Court Second Amendment case treats the key facts this same way is no accident. As the Seventh Circuit has explained in another Second Amendment case, "*only* legislative facts are relevant to the constitutionality of the [challenged] gun law." *Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012) (emphasis added). Once Article III standing is established—and the facts relevant to standing here have all been agreed upon—Plaintiffs submit that nearly every fact this Court needs to consider to resolve Plaintiffs' constitutional claims is a legislative fact, subject to the rules and principles laid out here.[2]

---

[2] As counsel explained at the pretrial conference, Plaintiffs included in their list of trial exhibits a number of documents that contain entirely legislative facts *not* because they believe that such documents should or need to be admitted into evidence, but because Plaintiffs understood this Court's orders to date to require that approach. Plaintiffs believe that approach is erroneous, for the reasons set forth above. Plaintiffs are ready and willing to meet-and-confer with Defendants regarding the exhibits that implicate these issues and the proper approach to them going forward.

DATED:  May 31, 2023

Paul D. Clement*
Erin E. Murphy*
Matthew D. Rowen*
Nicholas M. Gallagher*
Clement & Murphy, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900

* admitted *pro hac vice*

s/ Stephen Joncus
Stephen J. Joncus, OSB #013072
JONCUS LAW PC
13203 SE 172nd Ave Ste 166 #344
Happy Valley, OR  97086
(971) 236-1200
steve@joncus.net

JURISLAW LLP

s/ Shawn M. Lindsay
Shawn M. Lindsay (OSB No.: 020695)
Daniel J. Nichols (OSB No.: 101304)
Three Centerpointe Drive
Suite 160
Lake Oswego, OR 97035
(503) 968-1475
shawn@jurislawyer.com

*Counsel for Eyre Plaintiffs*

s/ Leonard W. Williamson
Leonard W. Williamson, OSB #910020
VAN NESS WILLIAMSON LLP
960 Liberty St. SE, Ste 100
Salem, OR 97302
(503) 365-8800
l.williamson@vwllp.com

*Counsel for OFF Plaintiffs*

s/ James L. Buchal
James L. Buchal, OSB #910020
MURPHY & BUCHAL LLP
PO Box 86620
Portland, OR 97286
(503) 227-1011
jbuchal@mbllp.com

*Counsel for Fitz and Azzopardi Plaintiffs*

## ATTORNEY CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2023, I caused the foregoing **PLAINTIFFS' SUPPLEMENTAL BRIEF ON LEGISLATIVE FACTS** to be filed with the Court's CM/ECF system, which provides service to all counsel of record.

DATED:  May 31, 2023

                                                                               JURISLAW LLP

                                                                               s/Shawn M. Lindsay
                                                                               Shawn M. Lindsay (OSB No.: 020695)
                                                                               Three Centerpointe Drive
                                                                               Suite 160
                                                                               Lake Oswego, OR 97035
                                                                               (503) 968-1475
                                                                               shawn@jurislawyer.com

                                                                             *Counsel for Eyre Plaintiffs*