Michael R McLane
mmclane@lynchmurphy.com
Lynch Murphy McLane LLP
1000 SW Disk Dr
Bend, OR 97702
Telephone: (541) 383-5857

Matthew A Wand
matt@wandlegal.com
Wand Legal LLC
1000 SW Disk Dr
Bend, OR 97702
Telephone: (503) 680-8180

*Attorneys for Amicus*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PENDLETON DIVISION

| | |
|---|---|
| OREGON FIREARMS FEDERATION, INC., et al.,<br><br>                    Plaintiffs,<br><br>    v.<br><br>KATE BROWN, et al.,<br><br>                    Defendants. | Case No. 2:22-cv-01815-IM *(Lead Case)*<br>Case No. 3:22-cv-01859-IM *(Trailing Case)*<br>Case No. 3:22-cv-01862-IM *(Trailing Case)*<br>Case No. 3:22-cv-01869-IM *(Trailing Case)*<br><br>CONSOLIDATED CASES<br><br>***AMICUS CURIAE* BRIEF OF OREGON HUNTERS ASSOCIATION AND DUCKS UNLIMITED** |
| MARK FITZ, et al.,<br><br>                    Plaintiffs,<br><br>    v.<br><br>ELLEN F. ROSENBLUM, et al.,<br><br>                    Defendants. | *(caption continued on next page)* |

Page 1 -    AMICUS CURIAE BRIEF OF OREGON HUNTERS ASSOCIATION AND DUCKS
UNLIMITED

KATERINA B. EYRE, TIM FREEMAN,
MAZAMA SPORTING GOODS, NATIONAL
SHOOTING SPORTS FOUNDATION, and
OREGON STATE SHOOTING ASSOCIATION,

Plaintiffs,

v.

ELLEN F. ROSENBLUM, Attorney General of
Oregon, and TERRI DAVIE, Superintendent of
the Oregon State Police,

Defendants.

DANIEL AZZOPARDI, et al.,

Plaintiffs,

v.

ELLEN F. ROSENBLUM, et al.,

Defendants.

## TABLE OF CONTENTS

STATEMENT OF INTEREST..............................................................................3

INTRODUCTION ..............................................................................................3

ARGUMENT ....................................................................................................4

    I.    Bruen fundamentally changed Second Amendment analysis and requires the
State of Oregon to establish that its restrictions are well founded in historical
norms..................................................................................................4

BACKGROUND ................................................................................................6

    II.    Measure 114 is overbroad, restricting firearms and activities with no historical
precedent for restriction or regulation as required under applicable Supreme
Court precedent....................................................................................7

    III.    Measure 114 will hamper fundraising efforts and available funds for habitat
conservation and charitable works...........................................................9

CONCLUSION..................................................................................................10

LYNCH MURPHY MCLANE LLP
ATTORNEYS AT LAW
T: (541) 383-5857 | F: (541) 383-3968
1000 SW DISK DRIVE
BEND, OREGON  97702

## TABLE OF AUTHORITIES

**CASES**

*District of Columbia v. Heller*, 554 U.S. 570 (2008) .......................................................4,7

*McDonald v. Chicago*, 561 U.S. 742 (2010) .......................................................................4

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. ___,
    142 S.Ct. 2111, 2134-35, 2137-38, 2156 (2022) ...............................................4,5,6,7

*Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 (1961) ....................................................5

*Koons v. Reynolds, No. 22-7464 (RMB/EAP), 2023 WL 128882 at *9 (D. N.J. Jan. 9,
2023)* .......................................................................................................................5

**STATUTES**

ORS 497.360 .....................................................................................................................8

## <u>INTEREST OF *AMICI CURIAE*</u>

        Oregon Hunters Association ("OHA") and Ducks Unlimited ("DU") are member associations with thousands of members residing throughout the United States. OHA and DU are both non-profit organizations, exempt from federal taxation under sections 501(c)(3) of the Internal Revenue Code. OHA is dedicated to educating, preserving, and protecting Oregon Hunters in their activities legally hunting wildlife. DU is dedicated to protecting and preserving natural wildlife habitats, including land available for legal hunting activities.

## <u>INTRODUCTION</u>

        OHA and DU submit this brief to discuss the effect that Ballot Measure 114 will have on the lawful activities of their members in Oregon. The *Amici* are composed of thousands of law-abiding members, who commit no crimes and are simply engaged in the lawful and ethical uses of firearms that they legally purchased. This measure will have a substantial and unnecessary impact on their activities in Oregon. In particular, OHA is dedicated to supporting youth hunters and first-time hunters from historically underrepresented groups. This emphasis on supporting and encouraging new hunters necessarily requires that they have access to hunting firearms. Measure 114 increases costs and barriers for these lawful activities. DU, with its hunter-conservationist model, regularly uses Pittman-Robertson conservation funds to fund conservation work in Oregon, which are generated on new firearms purchases. As these unreasonable burdens discourage new hunters and make purchasing firearms more expensive and

Page 3 -    AMICUS CURIAE BRIEF OF OREGON HUNTERS ASSOCIATION AND DUCKS
           UNLIMITED

LYNCH MURPHY MCLANE LLP
ATTORNEYS AT LAW
T: (541) 383-5857 | F: (541) 383-3968
1000 SW DISK DRIVE
BEND, OREGON  97702

burdensome, those funds will be diminished.  Every layer of additional expense, burden, and time discourages hunting activities and the purchase of all firearms, whether regularly used for hunting or crime.  As such, Measure 114 is overly broad, unduly burdensome, and unconstitutional.

<u>**ARGUMENT**</u>

***BRUEN* FUNDAMENTALLY CHANGED SECOND AMENDMENT ANALYSIS AND REQUIRES THE STATE OF OREGON TO ESTABLISH THAT ITS RESTRICTIONS ARE WELL FOUNDED IN HISTORICAL NORMS**

The historic nature of *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. Chicago*, 561 U.S. 742 (2010) have been widely recognized by the courts and in society at large.  With the United States Supreme Court's opinion in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. ___, 142 S.Ct. 2111 (2022), more than ten years of jurisprudence in Circuit Courts and District Courts has been swept away.  It is only approximately one year from the *Bruen* decision, and this is one of the first cases to be considered under this new standard.

Most importantly, *Bruen* clarifies the basic lens through which all courts must view the Second Amendment when it holds that this is no "second-class right" subject to a uniquely pro-government set of rules and that it is not available only to those with "special need" to exercise it.  *Bruen,* 142 S.Ct. at 2134-35, 2156.  The individual right to keep and bear arms must be analyzed as all other constitutional rights held by individuals.  The proper analysis courts must undertake reads:

> [W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  To justify its regulation, the government may not simply posit that the regulation promotes an important interest.  Rather, the government must demonstrate that the regulation is consistent with this Nation's historic tradition of firearm regulation.  Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

LYNCH MURPHY MCLANE LLP
ATTORNEYS AT LAW
T: (541) 383-5857 | F: (541) 383-3968
1000 SW DISK DRIVE
BEND, OREGON  97702

Id. at 2126 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)). Thus, the *Bruen* rule requires the government to prove – as its burden of proof – the historical basis for its regulations. Notably, Measure 114 is so broadly written that it substantially impacts firearms primarily used for hunting purposes, along with other firearms that the proponents suggested they were targeting. There is no "hunting rifle" or "hunting shotgun" exception to the Permit To Purchase program; rather, all firearms are restricted. Thus, the State is left to provide evidence of historical regulations from the time of adopting the Second Amendment and/or the Fourteenth Amendment to justify this regulation that impacts primarily hunting firearms.

Oregon's history with firearms regulations does not provide such evidence. Oregon's 1913 law regulating firearms dealt primarily with handguns and made requirements for their transfer, having nothing to do with hunting rifles and shotguns. The 1913 act was later replaced in 1925 by Oregon's Revolver Association Act that imposed requirements on retail vendors of handguns and restricted sales when neither party held a dealers' license, but notably contained an exception for transactions between those who were "personally known" to each other. *Id.* at 351.

Perhaps most importantly, however, is that none of the past Oregon regulations were enacted in a time period relevant under the *Bruen* test. The Second Amendment refers back to the adoption of the Constitution and the Founding Era. The Fourteenth Amendment was enacted during the Reconstruction Era shortly after the American Civil War with it passing Congress in 1866 and final ratification by the states in 1868. Oregon's first permit to purchase law was not passed until nearly fifty years later in 1913, rendering it meaningless under *Bruen*. This approach and use of the *Bruen* test was recently applied by the U.S. District Court of New Jersey in *Koons v. Reynolds, No. 22-7464 (RMB/EAP), 2023 WL 128882 at \*9 (D. N.J. Jan. 9, 2023)*, when the Court wrote: "[t]hat Defendants dedicate a significant portion of their argument discussing the benefits of the firearms regulations and not evidence of historical analogues is quite telling." *Koons v. Reynolds*, Case No. 22-7464 (RMB/EAP) (Document 34) p. 19, (U.S.D.

Page 5 -    AMICUS CURIAE BRIEF OF OREGON HUNTERS ASSOCIATION AND DUCKS UNLIMITED

LYNCH MURPHY MCLANE LLP
ATTORNEYS AT LAW
T: (541) 383-5857 | F: (541) 383-3968
1000 SW DISK DRIVE
BEND, OREGON  97702

N.J., Jan. 9, 2023) (granting plaintiff's Motion for Temporary Restraining Order staying enforcement of new gun control legislation). *Amici* urge this Court to ignore any and all arguments from Defendants asserting public benefits from gun control regulations and appeals to emotion regarding deaths caused by illegal use of firearms. Binding Supreme Court precedent in *Bruen* establishes that the consideration of the Court must be limited to historical precedent for the type of regulations presented in Measure 114.

 *Amici* further urge this Court to disregard any and all historical precedents for firearm regulations unless they were written broadly enough (or specifically drafted) to impact and delay the purchase of hunting firearms and shotguns. Mere generalized regulations are insufficient because hunting was such a widespread and necessary activity during the relevant time period that a general firearm regulation could hardly be assumed as a regulation on hunting equipment. If the State cannot present such evidence, then the Court should find that Measure 114 is unconstitutionally broad and impermissibly impacts firearms purchases for protecting hunting activities.

## **BACKGROUND**

 OHA was founded in 1983 and is a 501(c)(3) non-profit organization whose mission is "Protecting Oregon's wildlife, habitat and hunting heritage." Donheffner Dec., ¶ 3. OHA has 26 chapters in Oregon and approximately 10,000 members. Id. On a statewide basis, it advocates on behalf of science-based wildlife and habitat management, while at the local chapter level conducting wildlife habitat projects and offering hunter education-oriented youth and family events and programs. Id. OHA's fundraising activities often include firearm auctions and raffles at their events. Id. at ¶ 4. These activities account for approximately 50% of its annual revenue. Id. Under Measure 114, it is unclear how to legally conduct such activities or whether they will even be allowed under state law. It is clear, however, that certainly in the near-term, these fundraisers will be stopped pending confirmation that they can be allowed. Id.

 DU was founded in 1937 by a small group of concerned sportsmen after their effort to study the problem of declining waterfowl populations because of long-term drought in

Page 6 -  AMICUS CURIAE BRIEF OF OREGON HUNTERS ASSOCIATION AND DUCKS UNLIMITED

LYNCH MURPHY MCLANE LLP
ATTORNEYS AT LAW
T: (541) 383-5857 | F: (541) 383-3968
1000 SW DISK DRIVE
BEND, OREGON  97702

North America.  May Dec., ¶ 3.  DU is dedicated to conserving waterfowl habitat.  Id.  DU has grown substantially in membership in the United States and has sister organizations in Canada and Mexico.  Id.  DU has conserved more than 15 million acres of habitat across North America and has completed projects in every US State.  Id.  There are more than 8,000 DU members in Oregon, including 251 under the age of eighteen. Id. at ¶ 2.  DU receives Pittman-Robertson funding to support its conservation mission and delivery model.  Id. at ¶ 8.

## MEASURE 114 IS OVERBROAD, RESTRICTING FIREARMS AND ACTIVITIES WITH NO HISTORICAL PRECEDENT FOR RESTRICTION OR REGULATION AS REQUIRED UNDER APPLICABLE SUPREME COURT PRECEDENT

Much of the pleadings and arguments in this matter surround public safety and the use of firearms for self-defense.  While *Heller* and its progeny hold that Second Amendment rights necessarily include the purchase and use of guns by individuals for self-defense, other uses widely engaged in during the relevant historical timeframes should also be considered and protected because those activities were not even part of the consideration of what could be regulated.  OHA and DU members use firearms in lawful hunting activities as Americans have for centuries.  Oregon has a long history involving waterfowl hunting, from Native Americans to Lewis and Clark.  May Dec., ¶ 4.  Hunters view their firearms as a tool that requires proper use, care, and safety considerations.  Donheffner Dec., ¶ 10.  The regulations in Measure 114 will have a profound and negative impact on the ability of Oregonians to purchase and maintain firearms for these lawful uses, rendering its restrictions overly broad and accordingly unconstitutional.  These negative impacts and restrictions on the use of firearms for hunting purposes compels the State – under *Bruen* – to provide some historical basis for such restrictions on firearms primarily used for hunting.  *Amici* are aware of no such historical restrictions, as hunting was primarily seen as a chore for gathering meat for food.

OHA sponsors a Learn To Hunt program for Oregonians interested in learning to safely and lawfully hunt game.  Donheffner Dec., ¶ 8; Parkman Dec., ¶ 3.  In the Learn To Hunt

LYNCH MURPHY McLANE LLP
ATTORNEYS AT LAW
T: (541) 383-5857 | F: (541) 383-3968
1000 SW DISK DRIVE
BEND, OREGON  97702

program, aspiring hunters are taught that gun safety is always the first rule.  Id.  The fastest growing segment of new hunters are women, minorities, first generation legal immigrants and other people with no hunting heritage.  Parkman Dec., ¶ 3.  They simply have no one to guide them.  Id.  The Permit to Purchase program creates so many barriers that owning a hunting rifle or shotgun is simply too daunting, so most interested hunters will simply never hunt.  Id.  In addition, the complexity of crimes surrounding this lawful use of firearms for hunting is a substantial deterrence to this protected activity.  Donheffner Dec., ¶ 8.  The backlog of background check requests and uncertainty has essentially halted legal gun sales in the State of Oregon.  May Dec., ¶ 7.

Hunting is a multi-generational activity.  May Dec., ¶ 7.  Many hunters learn and hunt with family, which is the easiest entry into the sport.  Id.  The barriers to entry for new hunters are substantial, requiring Hunter Safety Training along with various licenses, permits, and fees some of which are unique to waterfowl (such as the federal waterfowl stamp).  May Dec., ¶ 5.  The additional burdens and regulations in Measure 114 will result in fewer new hunters, less waterfowl hunting, and significant decrease in conservation funding.  Id. at ¶ 6; Parkman Dec., ¶ 3, 5.  By stopping or impeding new hunters (multi-generational or otherwise), the entire sport is threatened by Measure 114.

For a new hunter, the traditional starter rifle costs approximately $100-$200.  Donheffner Dec., ¶ 9.  For game mammals or birds, the cost for an entry-level firearm can be approximately $300-$400.  Id.  The entire, complex, and lengthy, process of obtaining a Permit to Purchase, including the class and fingerprinting, and then additional background check at purchase, is expected to cost an additional $200 which will increase the barrier for hunting activities by 50% of the cost or more.  Id.

The State has not – and cannot – provide data that the commonly used hunting firearms (bolt action rifles and shotguns) are a significant contributor to widespread crime in Oregon.  Yet Measure 114 creates the same barriers and hurdles on hunting firearms without any distinction.  Thus, under any level of scrutiny from the Court, Measure 114's substantial barriers

Page 8 -    AMICUS CURIAE BRIEF OF OREGON HUNTERS ASSOCIATION AND DUCKS
UNLIMITED

LYNCH MURPHY MCLANE LLP
ATTORNEYS AT LAW
T: (541) 383-5857 | F: (541) 383-3968
1000 SW DISK DRIVE
BEND, OREGON  97702

to firearms ownership applied to hunting firearms are unnecessary and serve no legitimate government or public interest.

Strangely, Measure 114 fails to adequately account for any of the already existing safety classes and programs – or background checks – required or offered for other purposes. Since 1973, a Hunter Safety Education Training program has been a statutory requirement for any hunter age 17 or younger.  ORS 497.360.  Generations of Oregonian hunters have taken this course, yet it is not recognized as part of the Permit to Purchase training.  In order to obtain a Concealed Handgun License, an applicant must take a gun safety course, which is also not recognized or considered by Measure 114.  Every time an Oregonian has purchased a firearm from a licensed firearm dealer – for decades – that purchaser was required to undergo a background check prior to completing a purchase.  This is not deemed sufficient even though this check is undertaken at precisely the time of purchase.

Rather, in addition to all of those other training courses and background checks, Measure 114 erects yet another hurdle.  Another labyrinth of rules and checks and regulations to further delay and frustrate the purchase of firearms used for lawful purposes such as hunting. Thus, under Measure 114, the standards required to merely purchase an ordinary bolt action hunting rifle or shotgun will exceed the requirements to obtain a concealed handgun license ("CHL") because obtaining the CHL alone (without a new purchase) has fewer requirements on the licensee.

The State must also prove that it has the ability to conduct all of the new Measure 114 background checks and reviews and do so quickly.  For many years, hunters and legal purchasers of firearms have complained of substantial delays in background checks preventing them from purchasing firearms.  Measure 114 exacerbates this problem by adding more administrative and regulatory layers without any assurances of adequate funding to guarantee access to this critical constitutional right.  The Second Amendment does not allow a state to set up a multi-step regulatory scheme and then refuse to fully fund it, in effect fully denying all citizens the ability to exercise their constitutional rights.

Page 9 -    AMICUS CURIAE BRIEF OF OREGON HUNTERS ASSOCIATION AND DUCKS
            UNLIMITED

## MEASURE 114 WILL HAMPER FUNDRAISING EFFORTS AND
## AVAILABLE FUNDS FOR HABITAT CONSERVATION AND CHARITABLE WORKS

DU and OHA both engage in substantial charitable activities surrounding habitat, conservation, and restoration.  DU is decades-old, engaged in habitat preservation and restoration.  May Dec., ¶ 3.  OHA was more recently created but engages in important similar activities in the State of Oregon.  Each relies on fundraising activities to engage in these efforts. May Dec., ¶ 8; Donheffner Dec., ¶ 4, 7.  In addition, the sales of firearms and ammunition general funds support important habitat work though the Pittman-Robertson Federal Wildlife Restoration Act ("PR") and OHA and DU raise funds from members through firearms auctions and raffles.  Id.  These fundraising activities are critical for their charitable work.

In Fiscal Year 2022, the Oregon Department of Fish and Wildlife received over $26,000,000 in PR funding for wildlife conservation and hunter education. Donheffner Dec., ¶ 7. These funds rely on firearms and ammunition purchases because they are generated from an 11% excise tax on sales.  Id.  By creating additional barriers for purchases, those revenues will decrease.  Id.  Further, ODFW relies on funds from license fees and tag fees for its operations, by creating more barriers for new hunters into the sport, these funds will continue to decline.

The fundraisers supported by firearms auctions and sales are at substantial risk. For OHA, these fundraisers generate more than half of its available revenues.  Donheffner Dec., ¶ 4.  DU raises up to $750,000 annually in conservation funding from its events, and approximately 50% of event attendees participate in the firearms raffles and auctions.  May Dec., ¶ 9.  The participants and organizers of these events are law-abiding citizens, wholly unwilling to risk any criminal offense.  Id.  Further, the Permit to Purchase program is not implemented or available at this time.  Donheffner Dec., ¶ 5.  Absent this Court's intervention to stay enforcement of Measure 114, it is entirely and wholly illegal to purchase or sell any firearm in Oregon, including at charitable fundraising events.

The effects of Measure 114 have been felt within the outdoors community already.  James Nash is a decorated veteran who served our country in the Marines overseas.

LYNCH MURPHY MCLANE LLP
ATTORNEYS AT LAW
T: (541) 383-5857 | F: (541) 383-3968
1000 SW DISK DRIVE
BEND, OREGON  97702

Nash Dec., ¶ 5.  He was awarded two Purple Heart Medals and the Navy/Marine Corps Commendation medal with a combat V for valor.  Id.  He is a sixth generation Oregonian and returned to his family ranch in Wallowa County unable to perform regular ranch work due to his injuries sustained during his deployments.  Id. at ¶ 6.  He started an outfitting business guiding hunters and anglers, and Sig Sauer (a firearms manufacturer) hired him as a brand promoter and consultant.  Id.  Mr. Nash was recently informed that his contract was not being renewed with them.  Id. at ¶ 8.  He has lost this income.  Id.

## CONCLUSION

Measure 114 is overly broad and unconstitutional.  It creates a labyrinth of requirements and hurdles with the stated aim of preventing widespread firearms ownership without regard for the purpose of such ownership.  It creates a chilling effect that not only impacts ownership for self-defense use, but also for uncontroversial uses such as hunting.  The diminished sales of firearms in Oregon will cause a reduction of available funds for habitat and restoration projects, as well as lost revenue for Oregon Department of Fish and Wildlife.  At the present time, if allowed to continue, all sales of firearms in Oregon are illegal, which is in direct and conclusive violation of the Second Amendment.  Accordingly, it must be struck down by this Court.

Respectfully Submitted,

DATED this 1st day of June 2023.


LYNCH MURPHY McLANE LLP              WAND LEGAL LLC

*/s/ Michael R. McLane*                            */s/ Matthew A Wand*
Michael R McLane (OR Bar #904435)      Matthew A Wand (OR Bar #004189)
1000 SW Disk Dr                                    1000 SW Disk Dr
Bend, OR 97702                                      Bend, OR 97702
(541) 383-5857                                       (541) 383-5857
mmclane@lynchmurphy.com                   matt@wandlegal.com

*Attorneys for Amicus*                          *Attorneys for Amicus*


Page 11 -   AMICUS CURIAE BRIEF OF OREGON HUNTERS ASSOCIATION AND DUCKS
                  UNLIMITED

## CERTIFICATE OF SERVICE

In accordance with Fed. R. Civ. P. 5(b)(2)(E) and LR5-1, I hereby certify that on June 1,

2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system,

which will send a notification of such filing to all counsel of record.

DATED this 1st day of June 2023.

LYNCH MURPHY MCLANE LLP

*/s/Michael R. McLane*
Michael R McLane, OSB No. 904435
1000 SW Disk Dr
Bend, OR 97702
(541) 383-5857
mmclane@lynchmurphy.com

*Attorneys for Amicus*

WAND LEGAL LLC

*/s/ Matthew A Wand*
Matthew A Wand, OSB No. 004189
1000 SW Disk Dr
Bend, OR 97702
(541) 383-5857
matt@wandlegal.com

*Attorneys for Amicus*

LYNCH MURPHY MCLANE LLP
ATTORNEYS AT LAW
T: (541) 383-5857 | F: (541) 383-3968
1000 SW DISK DRIVE
BEND, OREGON  97702